In the Matter of EUGENE GOLD, as District Attorney of Kings County, Petitioner, v J. IRWIN SHAPIRO, as Associate Justice of the Appellate Division of the Supreme Court in the Second Judicial Department, et al., Respondents.

Second Department, April 7, 1978

### APPEARANCES OF COUNSEL

*Eugene Gold, District Attorney (Richard A. Finkel* and *Helman R. Brook* of counsel), petitioner *pro se.*

*Martin Erdmann (Ira Fisher* of counsel), for Walfredo Gonzalez, respondent.

### OPINION OF THE COURT

RABIN, J.

This is a proceeding pursuant to CPLR article 78 to prohibit the respondent Justice from signing an order effectuating his decision to grant the application of respondent Gonzalez (hereinafter defendant) for a stay of execution of judgment and for bail, pending his appeal to this court (see *People v Gonzalez,* decided Feb. 17, 1978). The sole issue is whether CPL 530.50 is

constitutional. That section essentially provides that bail, pending appeal, is not available to a defendant who has received a class A felony sentence.

The defendant was convicted, after trial, of criminal sale of a controlled substance in the third degree, a class A-III felony. He accordingly received a class A felony sentence of an indeterminate term of imprisonment of one year to life. The defendant timely filed a notice of appeal and, subsequently, applied to the respondent Justice for a stay of execution and bail. The respondent Justice granted defendant's application, but withheld signing the order to afford petitioner the opportunity to commence the instant proceeding.

The respondent Justice, in a comprehensive opinion declared that CPL 530.50 was an unconstitutional violation of the defendant's right to equal protection of the laws. He noted that the statute was supported by a rational basis when initially enacted, because at that time the minimum period of incarceration for a class A felony was greater than the potential minimum period for any other grade of felony, but that this rational basis was destroyed by the enactment of the 1973 drug laws (L 1973, ch 276), which subclassified class A felonies into three groups (see Penal Law, § 55.05). It is possible that, under section 70.00 of the Penal Law, as amended, an individual convicted of an A-III felony will be incarcerated for a lesser period than an individual who has received a minimum sentence under another grade of felony.[1] The respondent Justice reasoned that since greater severity is no longer an invariable concomitant of an A felony sentence, applying CPL 530.50 to defendants convicted of A-III felonies violates their right to equal protection of the laws.

■ Regardless of any disparity in sentence, the statute is rationally related to legitimate State interests and, therefore, we are compelled to grant the application.[2]

---

1. The minimum period of incarceration of an E felony conviction is the same as the mimimum period for an A-III felony. The mimimum period of incarceration for an A-II felony conviction is greater than the potential minimum period of incarceration for any other grade of felony, except a class B felony.

2. The defendant has argued that the strict scrutiny test should be applied because the right to be free is fundamental. The argument is without merit. Although it is abstractly true that there is a fundamental right to be free, such right is significantly qualified after a person has been convicted of a crime and sentence has been imposed. Nor do we accept the contention that strict scrutiny should be applied because there is a fundamental right to appeal. There is no such constitutional right (Matter of Mitchell, 40 NY2d 153) and, to the extent the right is statutory, it is not significantly impeded by the continued incarceration of the appellant.

■■ Preliminarily, it is emphasized that there is no constitutional right to bail after conviction *(People ex rel. Epton v Nenna,* 25 AD2d 518). In addition, although a State may afford an appellant the opportunity for bail, "[t]raditionally and acceptedly, there are offenses of a nature as to which a state properly may refuse to make provision for a right to bail" *(Mastrian v Hedman,* 326 F2d 708, 710, cert den 376 US 965). The narrow issue in this proceeding is whether the Legislature's determination not to extend the entitlement of postconviction bail to those persons who receive A-III felony sentences is constitutionally defective. We are not concerned with whether the mechanisms for granting bail are constitutional. The various statutes which create those mechanisms and which outline the factors to be considered in determining a bail application are entirely irrelevant to this proceeding.[3] Our inquiry begins with the question whether the class of persons convicted of A-III felonies represents such an insular group as to allow specialized treatment.

In 1973, as part of a comprehensive program against drug trafficking and its attendant crimes, the Legislature subclassified A felonies into three groups. The classifications of A-II and A-III felonies are comprised solely of drug-related crimes. The penal sanctions ascribed to the drug offenses classified as A-II and A-III felonies were designed to be particularly severe. Section 70.00 of the Penal Law dictates that anyone convicted of an A felony must be sentenced to an indeterminate sentence of imprisonment with a maximum of life and with a specified minimum term. This legislative program resulted from a determination that the epidemic incidence of drug offenses represented so heinous a threat to society as to require special treatment.

In *People v Broadie* (37 NY2d 100, cert den 423 US 950), the Court of Appeals held that the exceptionally severe punishments accorded to persons convicted of class A felonies neither violates equal protection of the laws nor constitutes cruel and unusual punishment. The court sustained the Legislature's determination that narcotics offenses represent a particularly grave threat to society and held that, in (p 118) "view of the

---

3. In this context we observe that CPL 510.30, which provides the criteria controlling the determination of bail applications, is expressly applicable only to those situations where the issuance of an order of bail is a matter of discretion. Subdivision 1 of that section explicitly recognizes that these criteria have no bearing to those cases in which an application for bail must be denied as a matter of law.

gravity of the offenses, the danger posed by the offenders, and the penological purposes to be served, the punishments imposed for these crimes" are rationally related to a legitimate State interest.

This rationale is equally applicable to the statute here under review. The effect of postconviction bail is to suspend the sentence pending determination of the appeal. Having determined that drug offenders constitute a distinct class of criminal and that they may be constitutionally subjected to particularly severe sentences as a function of their class, the Legislature may concomitantly determine that members of this class should not be entitled to have their sentences stayed.

■ The prohibition of bail for those persons who receive A felony sentences is in furtherance of the generally harsh penal sanctions imposed on A felons. Although a sentencing court may set the minimum sentence for an A-III felony at less than the minimum period which may be imposed for a lower grade of felony, in determining the relative harshness of a sentencing scheme it is inappropriate to look only at the minimum period of incarceration.[4] Courts necessarily review the full scope of the available punishment and the primary component must be the potential maximum punishment. Thus, a broad view of the penal sanctions which are necessarily imposed on A felons must be taken to determine whether these sanctions are significantly more severe than the correlative sanctions of any other grade of felony.

Class A-II and A-III felonies only involve drug offenses and the penal sanctions are designed to break the pervasive pattern of drug abuse by inflexibly removing the offender from society and, if the offender is allowed to return to society, he faces the possibility of continual surveillance through lifetime parole. Thus, section 70.00 of the Penal Law requires the imposition of a maximum term of life imprisonment for all persons convicted of class A felonies. That section also mandates that an express minimum sentence be imposed, thereby frequently removing the possibility of early parole. Even if released, it is possible that the A felon will never escape the stigma and pervasive restrictions of lifetime parole. He has no

---

4. Section 70.00 of the Penal Law provides that the minimum period of incarceration for an A-III felony could be eight and one-third years. That period is greater than, or equal to, the most severe minimum sentence which could be imposed on any grade of felony other than an A-I felony.

hope of either a conditional or an unconditional discharge (Penal Law, § 60.05). Nor, except in one narrow circumstance, is there any possibility of probation (Penal Law, § 65.00). In the circumstance where an A-III felon does receive probation, it is lifetime probation; the period of probation for any other grade of felony is only five years (Penal Law, § 65.00, subd 3). Besides postconviction bail, other entitlements, such as civil commitment to the Drug Abuse Control Commission (Mental Hygiene Law, § 81.25, subd [b], par 3), are automatically denied to the A felon. In sum, the penal sanctions are designed to speedily remove the convicted drug offender from society. In the event that the drug offender demonstrates that he has been sufficiently rehabilitated to be allowed to return to society through the auspices of parole, that return may forever be supervised to prevent a re-entry into the drug culture and its attendant crimes.[5]

Allowing an earlier and substantially unsupervised release pursuant to the privilege of postconviction bail would be antithetical to the legislative determination that drug offenders constitute an insular class who pose a peculiar threat to society and thus require especially severe punishment. Not only does the ultimate severity of an A-III felony sentence provide a basis for denying bail to this class of criminal, but the denial of bail to an individual who has received an A-III felony sentence is an integral component in furtherance of the over-all structure of punishment which has been created for drug offenders. Regardless of whether the possibility of lifetime imprisonment, and the possibility of lifetime supervision if parole is granted, will significantly increase the risk that the convicted A-III felon will abscond, the Legislature could properly determine that the welfare of society demands that the mandatory minimum sentence, no matter how short, commence immediately upon conviction, without affording the convicted A-III felon the privilege of suspending the sentence during the often protracted period of appellate review.

■ Thus, the rational basis recognized in *People v Broadie* (37 NY2d 100, *supra)* of isolating convicted offenders and deterring potential offenders, which supports the drug-law sentencing provisions, necessarily supports the constitutional-

---

5. Pursuant to section 259-j of the Executive Law, the State Board of Parole may, under certain circumstances, grant a discharge from parole prior to the expiration of the full maximum term of the sentence imposed.

ity of CPL 530.50 and the holding of *Broadie* must be deemed to be dispositive.

■ The respondent Justice's suggestion that CPL 530.50 "may well be unconstitutional * * * on due process grounds" *(People v Gonzalez, supra)* because it establishes an irrebuttable presumption that a person convicted of an A felony is "an unacceptable absconding risk", must also be rejected. The denial of postconviction bail does not stem from an irrebuttable presumption that the A-III felon has become an unacceptable absconding risk. Rather, the Legislature has made the constitutionally legitimate determination that the convicted drug offender has committed a crime of such inherent gravity as to preclude the entitlement of postconviction bail as part of the severe penal sanctions applied to A-III felons. This determination is within the principle that there is no absolute right to bail following a conviction. The determination of which offenses shall be bailable is primarily a question for the Legislature and exists independently of whether the particular offender is a serious absconding risk. The latter issue is relevant only in those circumstances where the offense is bailable.

■ CPL 530.50 creates an absolute bar to the granting of bail to all person who have received A felony sentences. The 1973 amendment to section 55.05 of the Penal Law subclassified A felonies, but preserved the major classification of class A felonies. It must be inferred that the major classification was continued to insure that related statutes will have continued applicability to the expanded class of crimes included in the general classification of A felonies. It must be concluded that the failure to amend CPL 530.50 was deliberate rather than the result of an oversight. Therefore, the respondent Justice was "without power to consider an application for bail after a conviction and sentence for a class A-III felony" (see *Matter of Rogers v Leff*, 45 AD2d 630, 633) and should be prohibited from granting the application for bail pending defendant's appeal.

HOPKINS, J. P., MARTUSCELLO and TITONE, JJ., concur.

Petition granted, without costs or disbursements, and the respondent Justice is prohibited from signing an order effectuating his determination to grant bail to respondent Gonzalez following the latter's conviction of, and sentence for, a class A-III felony (see *People v Gonzalez,* decided Feb. 17, 1978).