OPINION OF THE COURT
John P. DiBlasi, J.
“Although there is no absolute federal constitutional right to bail pending appeal, once a state makes provisions for such bail, the Eighth and Fourteenth Amendments require that it not be denied arbitrarily or unreasonably” (Pulaski v Hopkins, 745 F Supp 882, 885 [ED NY 1990]). In this case of first impression, the court is asked to declare CPL 530.50 (hereinafter section 530.50) unconstitutional on the grounds that it violates petitioner’s rights to due process of law and equal protection of the law under both the Federal and State Constitutions because it deprives him of the right to bail or release on his own recognizance pending appeal from his conviction of several sexual offenses committed against a child. This court acknowledges that the Legislature could have crafted a statute that provides more uniform protection of the public from convicted sexual predators. Specifically, it would seem rational and justified to afford the same protection to the public with respect to all persons convicted of committing a sexual offense against any person regardless of their age. Under the controlling standards for review of legislative enactments, however, it is clear that the bail statute at issue is constitutional.[1]
*304 I. Relevant Factual Background
From the time of his arrest on sexual assault charges involving a child victim, through the conclusion of his trial, petitioner was free on bail and appeared in court as required.[2] He was immediately remanded, without bail, upon the jury’s return of guilty verdicts on 14 of the 36 counts of the indictment, including those charging him with rape in the first and second degrees, sodomy in the first and second degrees, aggravated sexual abuse in the first and third degrees, and sexual abuse in the first and second degrees. At petitioner’s sentencing on September 14, 2001, the trial court imposed a term of incarceration in New York State prison aggregating more than 50 years.
Thereafter, petitioner moved pro se for release on his own recognizance or on bail pending the appeal from his conviction.[3] By decision and order entered on March 1, 2002, this court denied that motion in its entirety, upon its determination that section 530.50 constitutes an absolute bar to release pending appeal from a conviction where, as here, the defendant received a sentence for committing a class B or C felony defined in Penal Law article 130 (hereinafter an article 130 crime) against a victim under the age of 18 years (People v Hinspeter, 190 Misc 2d 614 [Sup Ct, Westchester County 2002]). In that decision, the court noted that petitioner did not raise a constitutional challenge to section 530.50 on his prior motion, while observing that in view of the analysis applied to an attack upon the original version of that section in Matter of Gold v Shapiro (62 AD2d 62 [2d Dept 1978], affd 45 NY2d 849 [1978]) with respect to class A-III drug crimes, “a constitutional challenge to the present statute would be of doubtful merit” (People v Hinspeter, supra, 190 Misc 2d at 620 n 8).
Having been denied release upon his earlier application, petitioner then commenced this habeas corpus proceeding in which he challenges the constitutionality of section 530.50.[4] Upon review of his initial papers, from which it was apparent that no issue of fact was involved which would require a hear *305 ing, this court issued an order to show cause in lieu of a writ of habeas corpus, and required respondent to show cause why petitioner should not be released on his own recognizance or on bail pending his appeal.[5] With all papers now submitted, the parties[6] have been given a full opportunity to address the issues raised by petitioner.
II. Discussion
In this proceeding, petitioner offers several grounds in support of his attack upon section 530.50. The first two of these are, as noted, constitutional challenges based upon his federal and state rights to due process of law and equal protection of the law. In addition, he asserts that section 530.50 violates the Eighth Amendment to the Federal Constitution. Finally, he argues that he is entitled to release on bail or on his own recognizance under the Federal Bail Reform Act. Then, relying upon his conclusion that section 530.50 is unenforceable, he argues that this court must set release conditions pending the appeal from his conviction. These arguments, none of which are persuasive, are addressed in the order deemed most logical.[7]
*306 A. Excessive Bail Challenge
The Eighth Amendment to the United States Constitution provides that “[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted” (emphasis supplied). This provision is binding upon the states through the Fourteenth Amendment of the Federal Constitution (see, Schilb v Kuebel, 404 US 357, 365 [1971], reh denied 405 US 948 [1972] [“the Eighth Amendment’s proscription of excessive bail has been assumed to have application to the States through the Fourteenth Amendment”]; see also, United States ex rel. Goodman v Kehl, 456 F2d 863, 868 [2d Cir 1972]). Petitioner contends that by denying bail to those defendants convicted of class B and C felonies defined in Penal Law article 130 where the victim is less than 18 years old, section 530.50 violates his Eighth Amendment rights.
Contrary to petitioner’s view, “[i]t is clear that there is no absolute federal constitutional right to bail pending appeal after a conviction in the state courts” (Brown v Wilmot, 572 F2d 404, 405 [2d Cir 1978]; Matter of Gold v Shapiro, supra, 62 AD2d at 65 [“there is no constitutional right to bail after conviction”]). Thus, his claimed violation of his Eighth Amendment rights is meritless. If he has any argument concerning his entitlement to postconviction bail, it must be founded upon some other constitutional deprivation, as discussed below.
B. Federal Bail Reform Act
Petitioner further asserts that under the Federal Bail Reform Act (18 USC § 3143) he should be released on bail or on his own recognizance because “Congress intended that a defendant should be released on bail pending appeal where the risk of flight or danger to the community are not significant factors and where the defendants [sic] appeal presents a substantial question of fact or law likely to result in an appellate reversal and a finding for the defendant” (petitioner’s affidavit in support at 4), a standard he claims to satisfy in this case. Although petitioner correctly states the applicable standard *307 under this act (the Bail Reform Act), his reliance upon it is misplaced.
The Bail Reform Act provides, in relevant part, that:
“the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence * * * be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released * * * .” (18 USC § 3143 [a] [1] [emphasis supplied].)
As used in that section, however, “the term ‘offense’ means any criminal offense, other than an offense triable by court-martial, military commission, provost court, or other military tribunal, which is in violation of an Act of Congress and is triable in any court established by Act of Congress” (18 USC § 3156 [a] [2] [emphasis supplied]). As is obvious from this definition, the Bail Reform Act has no application to state court proceedings but applies instead only to federal prosecutions (see, United States v Chilingirian, 280 F3d 704, 709 [6th Cir 2002] [Bail Reform Act “requires a district court to make two findings before granting bail pending appeal” (emphasis supplied)]). For that reason, petitioner may not rely upon the Bail Reform Act to support his application for release pending his appeal.
C. Fourteenth Amendment Challenges
Because, as noted, there is no constitutional right to bail following conviction (Matter of Gold v Shapiro, supra, 62 AD2d at 65), “[a] state may, if it chooses, decline to provide a system for post-conviction bail” (Griffith v State, 641 P2d 228, 231 [Alaska 1982]). However, “where the state has set up a classification of bailable and non-bailable offenses, the classification must not violate the right to due process and equal protection guaranteed by the Fourteenth Amendment” (Powers v Schwartz, 448 F Supp 54, 56 [SD Fla 1978], vacated as moot 587 F2d 783 [5th Cir 1979]). That limitation notwithstanding, section 530.50 is, “like all other legislative enactments [,] supported by a presumption of validity so strong as to demand of those who attack [it] a demonstration of invalidity beyond a reasonable doubt” (see, Matter of Van Berkel v Power, 16 NY2d 37, 40 [1965]). It is against that standard that petitioner’s next two challenges must be evaluated.
*308 1. Equal Protection
Petitioner’s central attack upon section 530.50 is founded upon his federal and state rights to equal protection of the law. In sum, it is his position that section 530.50 is unconstitutional because the Legislature’s determination that a person convicted of a class B or C felony sexual assault against a young victim should not be permitted to be released pending an appeal from his conviction “is not rationally related to a legitimate [state] interest” (petitioner’s supplemental affidavit, Aug. 1, 2002, at 1).
The Equal Protection Clause of the Fourteenth Amendment provides that no State shall “deny to any person within its jurisdiction the equal protection of the laws.” Similarly, New York’s Constitution commands that “[n]o person shall be denied the equal protection of the laws of this state or any subdivision thereof’ (NY Const, art I, § 11). Although petitioner grounds his equal protection challenge upon both the federal and state provisions, by doing so he gains no benefit because the state provision is no broader in scope and offers no greater protections than its federal counterpart (Matter of Esler v Walters, 56 NY2d 306, 313-314 [1982]; Dorsey v Stuyvesant Town Corp., 299 NY 512, 530 [1949], cert denied 339 US 981 [1950] [equal protection challenge “is precisely the same under the State Constitution as it is under the Federal Constitution”]).
The first step in resolving an equal protection challenge is to determine the level of scrutiny that must be applied (United States ex rel. Nistler v Chrans, 720 F Supp 115, 119 [ND Ill 1989]). This nation’s highest court has made it “clear that, unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest” (Nordlinger v Hahn, 505 US 1, 10 [1992]; see also, Henry v Milonas, 91 NY2d 264, 267-268 [1998] [“For equal protection purposes, classifications that do not target a suspect class or infringe upon a fundamental right must be upheld if the classification is rationally related to a legitimate State interest”]). Since the right to postconviction bail is not one which is “fundamental” or involves a “suspect classification,” if a statute such as section 530.50, which limits the availability of postconviction bail, is rationally related to a legitimate state interest, it will survive an equal protection attack (see, United States v Moore, 607 F Supp 489, 494-495 [ND Cal 1985] [because court found no *309 constitutional right to bail, equal protection challenge to Bail Reform Act was evaluated under rational relation test]; see also, Griffith v State, supra, 641 P2d at 231 [applying rational relation standard to attack upon state bail statute]; State v Handa, 66 Haw 82, 86, 657 P2d 464, 467 [1983] [same]).[8]
The rational relation standard of review “is a paradigm of judicial restraint” (Federal Communications Commn. v Beach Communications, Inc., 508 US 307, 314 [1993]). Consequently, under that standard, there is no requirement “that a legislature * * * actually articulate at any time the purpose or rationale supporting its classification” (Nordlinger v Hahn, supra, 505 US at 15).
To the contrary, an equal protection challenge fails “if there is any reasonably conceivable state of facts that could provide a rational basis for the classification” (Federal Communications Commn. v Beach Communications, Inc., supra, 508 US at 313 [emphasis supplied]). Because a statute is presumed to be constitutional, “[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it” (Madden v Commonwealth of Kentucky, 309 US 83, 88 [1940] [emphasis supplied]; Heller v Doe by Doe, 509 US 312, 320 [1993]; Affronti v Crosson, 95 NY2d 713, 719 [2001], cert denied 534 US 826 [2001]).
Notwithstanding that the burden is upon petitioner to establish the unconstitutionality of section 530.50, respondent offers two bases which support its classification of crimes for which postconviction release on bail or recognizance is not permitted. First, he asserts that offenders who commit crimes against victims under the age of 18, of the type defined in Penal Law article 130 as class B and C felonies, have a high risk of recidivism, such that SARA’s goal of protecting children against sexual predators will be advanced by denying them the opportunity for release pending appeal from conviction for any such crime. Second, respondent maintains that “ ‘denial of bail pending appeal necessarily effectuates the swift imposition of sentence, which the Legislature rationally could have believed would enhance the deterrent effect of punishment’ ” (respondent’s mem at 9, quoting State v Handa, supra, 66 Haw at 86, 657 P2d at 467).
*310 For his part, petitioner does not contend that these two goals are unreasonable. Rather, his attack upon section 530.50 is that the Legislature has acted arbitrarily by “singl[ing] out for special treatment” defendants convicted of committing article 130 B and C felonies against infant victims and failing to apply it to convictions for “other felonies against children which are not B or C felonies” (petitioner’s affidavit in support at 10). Such a claim is classified as one of “underinclusion” (see, Griffith v State, supra, 641 P2d at 232). In addition, specifically with respect to the first goal identified by respondent, petitioner maintains that it finds no support in the legislative history of section 530.50.
Turning first to the second of the purported legislative goals, the court cannot agree that it provides support for a finding of constitutionality in the face of an equal protection challenge. Certainly, by requiring the immediate incarceration of a defendant upon his conviction, the State is ensured that the defendant is “swiftly” punished. Moreover, such immediate punishment furthers the goal of specific deterrence, by removing the defendant from society, and thereby assuring that he cannot commit any other crime until his ultimate release. Nevertheless, the same concerns apply to all persons convicted of crimes, whether those crimes involve acts of violence or not. For example, a person convicted of attempted murder in the second degree, a class B violent felony, who shoots another person at point blank range but fails to kill him, could equally well be said to be deserving of immediate punishment to further the end of deterrence. The same may be said of a defendant convicted of raping an 18-year-old victim, also a class B violent felony. Yet under section 530.50, both hypothetical defendants are eligible for bail pending appeal. Petitioner seizes upon this “underinclusion” to argue that, as amended by SARA, section 530.50 lacks any rational relation to any legitimate state interest.
As petitioner correctly asserts, the essence of equal protection is that “all persons similarly circumstanced shall be treated alike” (F.S. Royster Guano Co. v Commonwealth of Virginia, 253 US 412, 415 [1920]). That does not mean, however, that “things which are different in fact or opinion [must] be treated in law as though they were the same” (Tigner v Texas, 310 US 141, 147 [1940], reh denied 310 US 659 [1940]). Thus, under our system of government, “[t]he initial discretion to determine what is ‘different’ and what is ‘the same’ resides in the legislatures of the States,” which are granted “substantial *311 latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill” (Plyler v Doe, 457 US 202, 216 [1982]). Where the “rational relation” standard governs, a distinction drawn by the Legislature will survive equal protection attack, so long as “the classification at issue bears some fair relationship to a legitimate public purpose” (ibid.), notwithstanding that “it is not made with mathematical nicety, or because in practice it results in some inequality” (Lindsley v Natural Carbonic Gas Co., 220 US 61, 78 [1911]).
Although respondent cites State v Handa (supra, 66 Haw 82, 657 P2d 464) as support for his position, the bail provision reviewed in that case is clearly distinguishable from section 530.50. In Handa, the statute denied bail pending appeal to any person convicted of a felony for which a prison term was imposed. Thus, unlike section 530.50, the Hawaii statute accomplished its goal of ensuring swift punishment and deterrence of the entirety of the class of individuals whose convictions resulted in the imposition of a specific sentence. Given that distinguishing factor, the court in Handa understanding^ reached the conclusion that “by denying bail to the class of convicted felons sentenced to imprisonment,” the statute accomplished its “expressed purposes of (1) protecting the community from the dangers posed by convicted felons and (2) enhancing the deterrent effect of punishment” (66 Haw at 87, 657 P2d at 467).
Rather than being comparable to the statute found constitutional in Handa, section 530.50 is more akin to that held invalid in Griffith v State (supra, 641 P2d 228). Therein, the court addressed a statute which provided, in relevant part, that “if the offense a person has been convicted of is murder in the first degree, robbery in the first degree, kidnapping, or sexual assault in the first degree * * * , he may not be released on bail * * * pending appeal” (Alaska Stat former § 12.30.040 [b]). In opposition to an equal protection attack, the State of Alaska “cite[d] a pair of legislative criteria in support of the Alaska provision: (1) assurance of continued appearances and amenability to the further orders of the court, and (2) protection of the community” (Griffith v State, supra, 641 P2d at 232). In rejecting the community protection basis for the stat *312 ute as “not convincing,” the Griffith court observed that “some of these other offenses for which bail is an option have been categorized by the legislature to be as serious as or more serious than some of the offenses within AS 12.30.040 (b)” (id. at 232-233). Because it “conclude[d] that [the] legislative scheme! ] [made] bail optional for some dangerous convicts, but[] without apparent explanation denie[d] it to others similarly situated,” the court held that the statute violated the Federal Equal Protection Clause (at 233).
Even applying the liberal “rational relation” test, section 530.50 cannot withstand petitioner’s challenge upon the ground that it advances the goal of deterrence by ensuring swift punishment of sexual predators, since no rational basis exists for barring release on bail or recognizance pending appeal only to defendants convicted of class B and C article 130 felonies committed against infant victims, while permitting release of defendants convicted of other equally serious B and C felonies involving violence, such as attempted murder in the second degree (Penal Law §§ 110.00, 125.25), rape in the first degree (Penal Law § 130.35) against a victim 18 years old or older, robbery in the first degree (Penal Law § 160.15), kidnapping in the second degree (Penal Law § 135.20) and arson in the second degree (Penal Law § 150.15), to name but a few.[9] Consequently, if this goal was the only one served by the statute, the court would agree with petitioner that section 530.50 is constitutionally infirm (see, Griffith v State, supra, 641 P2d at 233).
Here, however, there is an additional consideration that supports the statute. That is the concern with recidivism among convicted pedophiles and the need for protection of children, who constitute a special class of victims.
As demonstrated by legislative materials proffered by respondent, studies have shown, inter alia, that “[rjeleased rapists were found to be 10.5 times as likely as nonrapists to be re-arrested for rape, and those who had served time for sexual assault were 7.5 times as likely as those convicted of other crimes to be re-arrested for a new sexual assault” (Lamont supplemental affirmation in opposition, exhibit E, at 38, Sex Offenses and Offenders, An Analysis of Data on Rape and Sexual Assault, US Dept of Justice, Office of Justice Programs, *313 at 27).[10] This data, combined with that demonstrating the high incidence of child victims among victims of serious sexual crimes in general,[11] supports a legislative view that young victims, in particular, need protection from sexual predators, such that individuals convicted of violent sexual crimes involving victims under the age of 18 should not be eligible for release pending appeal.
Seeking to undermine the recidivism basis for section 530.50, petitioner cites a study indicating that the recidivism rate for sexual offenders “is less than half the rate reported for other major crime” (petitioner’s affidavit in support at 11). Petitioner’s data, even if accurate,[12] does not warrant rejection of the Legislature’s recidivism concern as sufficient support for the amendment of section 530.50 which is attacked in this proceeding. To the extent that this data is offered to prove that the Legislature erred in concluding that recidivism among sexual predators was a substantial cause for concern, petitioner’s proof falls short of its mark. It is settled law that “ [a]l-though parties challenging legislation under the Equal Protection Clause may introduce evidence supporting their claim that it is irrational, * * * they cannot prevail so long as ‘it is evident from all the considerations presented to [the legislature], and those of which [the court] may take judicial notice, that the question is at least debatable’ ” (Minnesota v Clover Leaf Creamery Co., 449 US 456, 464 [1981], reh denied 450 US 1027 [1981], quoting United States v Carolene Prods. Co., 304 US 144, 154 [1938] [internal citation omitted]; Affronti v Cros- *314 son, supra, 95 NY2d at 718-719). In this matter it is evident that based upon the data included in the legislative history, the question of whether the recidivism rate for individuals convicted of violent sexual offenses against young victims is so substantial that denial of release of such individuals pending appeal is justified “is at least [a] debatable [question]” (see, Minnesota v Clover Leaf Creamery Co., supra, 449 US at 464). Consequently, because “there was evidence before the legislature reasonably supporting the classification [under section 530.50], [petitioner] may not procure invalidation of th[at statute] merely by tendering evidence in court that the legislature was mistaken” (see, ibid.).
To the extent that petitioner offers his contradictory recidivism data in support of his underinclusion claim in general, it is also insufficient for that purpose. Certainly, the Legislature could have drafted a postconviction bail statute that was more evenhanded in application by, for example, denying bail to all individuals convicted of violent felonies or all those sentenced to more than a certain minimum state prison sentence (cf., Browning v State, 254 Ga 478, 478, 330 SE2d 879, 880 [1985] [no equal protection violation where statute denied postconviction bail to defendants “convicted of murder, rape, armed robbery, kidnapping, or aircraft hijacking and who ha(ve) been sentenced to serve a period of incarceration of seven years or more”]). That it chose instead to limit section 530.50 to a smaller class of convicted felons does not necessarily render the statute unconstitutional.
It is settled law that “[i]n the area of * * * social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect” (Dandridge v Williams, 397 US 471, 485 [1970], reh denied 398 US 914 [1970]). This principle evolves from judicial recognition that “[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations” (see, Metropolis Theater Co. v City of Chicago, 228 US 61, 69 [1913]). Thus, the Equal Protection Clause “is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State’s objective” (McGowan v Maryland, 366 US 420, 425 [1961] [emphasis supplied]). Put another way, under the rational relation standard, “[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it” (id. at 426).
In amending section 530.50 to deny postconviction release to those defendants convicted of article 130 crimes against victims *315 less than 18 years of age, the Legislature was acting out of concern for a specific class of victims, i.e., children, who, because of their ages, lack the emotional and physical maturity to adequately protect themselves from sexual predators. Because there is evidence that those who prey upon children are likely to repeat that conduct even after having been convicted of such crimes in the past, the Legislature could rightly have concluded that denying release pending appeal from conviction of an article 130 crime involving a victim less than 18 years old was one meaningful way in which to extend some protection to those most likely to be victimized again by such defendants. Since the potential for recidivist behavior by that class of defendants is not “wholly irrelevant” to the Legislature’s goal of protecting young children from becoming victims of these sexual predators (see, McGowan v Maryland, supra, 366 US at 425), who “constitute an insular class who pose a peculiar threat to society and thus require especially severe [limitations upon their freedom pending appeal from their convictions],” the legislative decision to deny them postconviction release does not violate their equal protection rights (see, Matter of Gold v Shapiro, supra, 62 AD2d at 67 [application of former version of section 530.50 to class A-III drug felonies is not equal protection violation]).
As set forth in petitioner’s supplemental papers, it appears that as a further challenge to respondent’s position, petitioner contends that there is no evidence in the legislative history that prior to enacting the amendment to section 530.50 under SARA, the Legislature ever considered the factor of protecting children from becoming the victims of convicted sexual abusers awaiting appellate review of their criminal convictions. Assuming, arguendo, that this was true, this fact is without effect upon the court’s determination.
As an initial matter, the record, as presented by respondent, does include references to the release of convicted sexual offenders, and the impact of such releases upon the public in general and children in particular. These include memoranda in support of SARA and an earlier bill which would have similarly limited the opportunity for convicted sexual offenders to be released after conviction (Lamont supplemental affirmation, exhibit C).[13]
*316 More importantly, even if there was no evidence in the legislative history to support the Legislature’s consideration of the recidivism factor, that fact would be of no moment because a state defending against an equal protection attack “has no obligation to produce evidence to sustain the rationality of a statutory classification” (Heller v Doe, supra, 509 US at 320; see, People v Lagana, 2002 NY Slip Op 40160[U], *2 [App Term, 2d Dept 2002] [“the People were not obligated to provide the legislative history for the subject ordinance to demonstrate that the Town * * * considered alternatives to the classification contained in the ordinance”]). Thus, while petitioner may seek to raise a factual issue as to the sufficiency of the support for a legislative determination to bar those in his position from obtaining postconviction release, that choice by our Legislature “is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data” (see, Federal Communications Commn. v Beach Communications, Inc., supra, 508 US at 315; see also, Port Jefferson Health Care Facility v Wing, 94 NY2d 284, 291 [1999], cert denied 530 US 1276 [2000]).
Indeed, because of the presumption of constitutionality afforded to all statutes, in reviewing the Legislature’s purpose in enacting section 530.50, this court “may even hypothesize the motivations of the State Legislature to discern any conceivable legitimate objective promoted by the provision under attack” (Maresca v Cuomo, 64 NY2d 242, 251 [1984], appeal dismissed 474 US 802 [1985] [emphasis supplied]), because “it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature” (Federal Communications Commn. v Beach Communications, Inc., supra, 508 US at 315). Consequently, even if not argued by respondent, this court would be authorized to determine for itself, and would conclude, that the legislative goal underlying the SARA amendment of section 530.50 was to protect children from becoming future victims of violent sexual *317 offenders awaiting appellate review of their convictions (see, ibid.).[14]
As noted, since he is the party attacking the “legislative arrangement” of section 530.50 on equal protection grounds, petitioner bears the burden “to negative every conceivable basis which might support it” (see, Madden v Kentucky, supra, 309 US at 88; see also, Vance v Bradley, 440 US 93, 97 [1979] [party asserting equal protection challenge under rational relation standard bears burden of showing that “the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that (the court) can only conclude that the legislature’s actions were irrational”]). In this proceeding, petitioner has not sustained that burden. Consequently, his equal protection attack fails.
2. Due Process of Law
Both the Fourteenth Amendment of the United States Constitution and article I, § 6 of the New York State Constitution guarantee that no person shall be deprived of life, liberty or property without due process of law. Without elaboration, petitioner alleges that his due process rights under both Constitutions, which are equivalent (People v Gazulis, 29 Misc 2d 939, 943 [Poughkeepsie City Ct 1961]), are violated by section 530.50.
In the context involved at bar, it is settled law that “the Due Process Clause of the Fourteenth Amendment does not impose procedures on a state’s decision whether to grant bail to a criminal convict pending appeal” but “does require the state * * * to act consistently once it decides to grant bail to some of these persons” (United States ex rel. Nistler v Chrans, supra, 720 F Supp at 118). Thus, an “arbitrary denial” of a right to bail pending appeal created by a State Legislature is a denial of due process (see, United States ex rel. Cameron v People of State of N.Y., 383 F Supp 182, 184 [ED NY 1974]).
In proffering his due process attack, petitioner contends that he has been denied his right to postconviction release. “The *318 State, however, must first have granted a right to bail before a criminal defendant may claim the right has been denied in violation of due process” (State v Handa, supra, 66 Haw at" 88, 657 P2d at 468). Petitioner in this case has been convicted of certain crimes for which the Legislature has determined that release on bail or recognizance pending appeal is unwarranted. “Since [he] has no right to bail [pending appeal], he is precluded from arguing an arbitrary deprivation of the right” (see, ibid.).
Assuming, arguendo, that he may be heard on a due process challenge to section 530.50, petitioner must show that there is “no rational basis” for the denial of postconviction release to a defendant convicted of committing an article 130 crime against a victim less than 18 years old (see, United States ex rel. Nistler v Chrans, supra, 720 F Supp at 118). This he has not done. It cannot be credibly denied that protecting young victims from violent sexual assaults is a legitimate legislative goal which provides a rational basis for the amendment of section 530.50 under SARA (see, Schall v Martin, 467 US 253, 264 [1984] [“The legitimate and compelling state interest’ in protecting the community from crime cannot be doubted”]; see also, United States ex rel. Nistler v Chrans, supra, 720 F Supp at 118 [“Denying bond to persons appealing conviction of a violent felony is rational, even when there is no evidence of chronic violent behavior”]).
III. Conclusion
In ruling upon petitioner’s challenge to section 530.50, this court “must be guided by the familiar principle that fit is only as a last resort’ that courts strike down legislative enactments on the ground of unconstitutionality” (Wiggins v Town of Som-ers, 4 NY2d 215, 219 [1958], quoting Matter of Ahern v South Buffalo Ry. Co., 303 NY 545, 555 [1952], affd 344 US 367 [1953]). Although petitioner complains that the Legislature has unconstitutionally deprived him of the opportunity for release pending his appeal, he has failed to meet the proof burden imposed upon a party attacking the constitutionality of a statute. For that reason, his petition for habeas corpus relief must be dismissed,[15] and this court’s earlier decision that section 530.50 bars it from considering the merits of petitioner’s *319 application for release on his own recognizance or on bail pending his appeal continues to control in this matter (see, People v Hinspeter, supra).
Wherefore, it is adjudged and ordered that the petition is dismissed.

. As amended in 2000 as part of the Sexual Assault Reform Act (SARA), and effective February 1, 2001, section 530.50 provides that: “A judge who is otherwise authorized pursuant to section 460.50 or section 460.60 to issue an order of recognizance or bail pending the determination of an appeal, may do so unless the defendant received a class A felony sentence or a sentence for a felony, other than a class D or class E felony, defined in article one hundred thirty of the penal law and committed or attempted to be committed against a person less than eighteen years of age.” Prior to that amendment, it provided that: “A judge who is otherwise authorized pursuant to section 460.50 or section 460.60 to issue an order of recognizance or bail pending the *304 determination of an appeal, may do so unless the defendant received a class A felony sentence.” (CPL former 530.50.)

. Upon his arrest, bail was set at $10,000. That bail was increased to $20,000 upon petitioner’s arraignment on the indictment.

. Since that time defendant has been assigned counsel to represent him in that appeal.

. As required, the proceeding is brought against the person detaining petitioner, i.e., the superintendent of the prison facility where petitioner is incarcerated. Although the undersigned Justice was not involved in the underlying criminal prosecution, petitioner has opted to bring this applica *305 tion before him, pursuant to CPLR 7002 (b) (3), which permits a habeas corpus petition to be made to “any justice of the supreme court.”

. CPLR 7003 (a) provides, in relevant part, that “[t]he court to whom the petition is made shall issue the writ without delay on any day, or, where * * * it is clear that there is no disputable issue of fact, order the respondent to show cause why the person detained should not be released.”

. Although respondent is a state employee who would ordinarily be represented by the New York State Attorney General, as required by law the Westchester County District Attorney has been served with notice of this application (CPLR 7009 [a] [3]), and she appears for respondent pursuant to an agreement with the Attorney General, as expressed in a letter submitted by the Attorney General (Angelico letter, Sept. 13, 2002). Notwithstanding that agreement, in his letter the Attorney General acknowledges that he “has carefully reviewed [the District Attorney’s] affirmation and memorandum, agrees with the statements contained therein, and hereby adopts said papers as respondent’s answer to the petition” (ibid.). The Attorney General restated that position in a letter dated October 25, 2002 in which he adopted the supplemental papers submitted by the Westchester County District Attorney pursuant to a further order of this court.

. In addition to opposing the application on its merits, respondent offers two grounds supporting dismissal of the writ. Contrary to his view that petitioner has not been denied a fundamental constitutional or statutory right and cannot seek review of his constitutional claim in this proceeding, petitioner may be heard on his challenge to section 530.50 because his attack is premised upon an alleged “invasion” of his constitutional rights to due process of law and equal protection of the law (see, People ex rel. Klein v Krueger, 25 NY2d 497, 500 [1969]). Similarly, while respondent correctly notes that habeas corpus review of a bail decision is limited to determining whether the *306 bail denial was an abuse of discretion or a violation of the constitutional bar against excessive bail or its arbitrary refusal, in this case this court’s earlier decision denying bail was not a discretionary one, but was based solely upon the effect of section 530.50 upon a postconviction bail application. Thus, review of the constitutional issue in this proceeding is available because petitioner’s challenge is one constituting a claim that the bail denial was made “for reasons insufficient in law” (see, People v Mohammed, 171 Misc 2d 130, 139 [Sup Ct, Kings County 1996]).

. Petitioner concedes that this is the governing standard, as evidenced by his claim, set forth above, that the statutory classification at issue “is not rationally related to a legitimate interest” (petitioner’s supplemental affidavit, Aug. 1, 2002, at 1).

. These crimes parallel those excluded under the Alaska statute reviewed in Griffith, such as “Second degree murder[J [ ] an unclassified offense for which life imprisonment is a potential sentence [in Alaska, and m] anslaughter, assault in the first degree, and arson in the first degree, * ** * all [of which are] class A felonies” in that state (Griffith v State, supra, 641 P2d at 233).

. This material was provided pursuant to this court’s order directing the parties to submit supplemental papers addressing the issue of what factors, if any, the Legislature considered in enacting section 530.50.

. For example, the Justice Department analysis indicates that “violent sex offenders with single victims reported that two-thirds of their victims had been under the age of 18 [,] offenders of sexual assault reported 8 out of 10 victims had been under the age of 18 (44.7% were 12 years or younger)” and “[m]ore than 25% of sexual assault murder victims were under 18, compared to 15% of all murder victims” (Lamont supplemental affirmation in opposition at 5, citing exhibit E, at 35, 40, Sex Offenses and Offenders, An Analysis of Bata on Rape and Sexual Assault, US Dept of Justice, Office of Justice Programs, at 24, 29).

. Petitioner provides the following citation in support of this claim: James Krivacska, Societal Myths About Sex Offending and Consequences for Prevention of Offending Behavior Against Children and Women, 11 Issues In Child Abuse Accusations (2001) (petitioner’s affidavit in support at 11). Although petitioner has not provided a copy of the study, because neither the cited article nor the data quoted by petitioner are challenged by respondent, the court accepts the citation and data as valid for the purposes of this proceeding.

. This 1997 bill was sponsored by State Senator Mary Lou Rath, who described it as one which would “help ensure that persons convicted of felony sex offenses do not have the chance to repeat their crimes before incarcera *316 tion,” thereby “provid[ing] protection to our children by keeping these predators in jail between conviction and sentencing” (Lament supplemental affirmation, exhibit C). By way of example, Senator Rath cited a reported case from Genesee County in which “a 27 year old man * * * plead guilty to first degree sexual assault involving the abduction of a 10 year old girl[ and w]hile awaiting sentencing, the man was arrested again and charged with first degree sexual abuse for acts committed on a 6 year old girl” (ibid.).

. The Legislature’s concern for protecting children from recidivist sexual predators is evidenced by its enactment of the Sex Offender Registration Act (SORA), enacted prior to SARA. As observed by the court in Doe v Pataki (120 F3d 1263, 1276 [2d Cir 1997], cert denied 522 US 1122 [1998]), SORA’s preamble sets forth the following as part of its statement of the findings and intent of the Legislature in enacting that bill: “The legislature finds that the danger of recidivism posed by sex offenders, especially those sexually violent offenders who commit predatory acts characterized by repetitive and compulsive behavior, and that the protection of the public from these offenders is of paramount concern or interest to government.” (Emphasis supplied.)

. During the period for the parties’ submissions, petitioner filed two motions to preclude respondent from being heard in opposition to the petition based upon allegations that the District Attorney failed to serve and file her opposition papers pursuant to the schedule established by the court in its orders. In view of the fact that the court amended one of its orders to extend *319 the time for opposition papers and that petitioner had the opportunity to present his position in full, both motions are denied in all respects.